**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSHUA PAYNE, | : | Civil No. 3:15-cv-1010 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| DUNCAN, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

### I.   Background

Plaintiff Joshua Payne ("Plaintiff"), a Pennsylvania state inmate who, at all times

relevant, was housed at the Camp Hill State Correctional Institution ("SCI-Camp Hill"),[1]

commenced this action on May 19, 2015 pursuant to 42 U.S.C. § 1983.  (Doc. 1).  The

matter is proceeding *via* an amended complaint wherein Plaintiff names the following

Defendants: Duncan, Ziegler, Settle, McElwain, Whalen, and Bell.  (Doc. 20-1).  Presently

pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of

Civil Procedure 56.  (Doc. 26).  Despite being granted additional time to file a brief in

opposition to Defendants' dispositive motion, Plaintiff failed to oppose the motion.  (Doc.

32).  Accordingly, the motion will be deemed ripe for disposition and, for the reasons set

---

[1]   Plaintiff is currently confined at the Mahanoy State Correctional Institution in Frackville, Pennsylvania.

forth below, will be granted.

## II.    Summary Judgment Standard of Review

When a party moves to dismiss, but where "matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for summary

judgment under Rule 56." FED. R. CIV. P. 12(d).  Typically, when a court converts a motion

to dismiss into a motion for summary judgment under Rule 56, notice must be given to all

parties of the court's intent to do so.  *Id.*; *Garcia v. Newtown Twp.*, 2010 WL 785808, at *3

(E.D. Pa. 2010).  However, if a motion to dismiss has been filed with an alternative request

for summary judgment, the Third Circuit Court of Appeals has found that the alternative

filing is sufficient to "place the parties on notice that summary judgment might be entered."

*Latham v. United States*, 306 F. App'x 716, 718 (3d Cir. 2009) (citing *Hilfirty v. Shipman*, 91

F.3d 573, 578-79 (3d Cir. 1996)).  Accordingly, the Court will treat the Defendants' motion

as one for summary judgment.

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

2

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of

the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the

non-moving party, and where the non-moving party's evidence contradicts the movant's,

then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am.,*

*Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III.   Allegations of the Amended Complaint

Plaintiff alleges that on March 7, 2013, his cell was searched by Duncan and Ziegler.

(Doc. 20-1, ¶ 12). Prior to the cell search, Plaintiff alleges that Duncan told Ziegler that

Plaintiff essentially got Duncan kicked out of the special management unit ("SMU"). (*Id.* at ¶

13). Duncan also allegedly told Ziegler that Plaintiff was a prolific filer of grievances and

lawsuits, and he should throw away Plaintiff's property to deter him from filing more

grievances and lawsuits. (*Id.* at ¶ 14). When the officers were preparing to search the cell,

Plaintiff alleges that he was strip searched and verbally harassed by Duncan. (*Id.* at ¶¶ 16,

18, 19).

During the cell search, the officers allegedly removed Plaintiff's legal materials,

religious material, and personal photographs. (*Id.* at ¶¶ 19, 25-28, 30). Plaintiff claims that

Duncan and Ziegler discarded his property in retaliation for filing previous grievances and

4

lawsuits. (*Id.* at ¶¶ 13-14, 18, 23, 25-26, 28, 30, 55). Plaintiff requested a confiscation slip to document the missing items, which was denied by the officers. (*Id.* at ¶ 22). Plaintiff claims that his property was never returned, even though he reported the missing property to McElwain and Settle. (*Id.* at ¶ 24). Plaintiff alleges that the confiscation of his legal documents hindered his ability to present evidence in pending civil and criminal matters. (*Id.* at ¶¶ 25-26). Plaintiff asserts that Duncan, Ziegler, Settle, McElwain, Whalen, and Bell violated his equal protection rights by obstructing his ability to present his evidence in the other cases. (*Id.* at ¶¶ 61-62).

Plaintiff alleges that Settle, McElwain, and Whalen conspired to violate Plaintiff's First Amendment, due process, and equal protection rights by assisting Duncan and Ziegler in the destruction of his legal materials. (*Id.* at ¶¶ 63-65). Plaintiff further alleges that Bell conspired to violate Plaintiff's First Amendment and due process rights by assigning Whalen as the grievance officer, which he claims was in violation of Pennsylvania Department of Corrections ("DOC") policy. (*Id.* at ¶¶ 67, 71). He claims that Bell assigned Whalen as the grievance officer in retaliation for Plaintiff filing previous grievances and lawsuits. (*Id.* at ¶¶ 40, 72).

On March 20, 2013, Plaintiff filed a grievance against Duncan, Ziegler and Whalen "describing the retaliatory acts of intentionally taking and destro[y]ing Plaintiff's personal property and claims of conspiracy of these staff to cover up their actions." (*Id.* at ¶ 37).

5

Plaintiff asserts that he also filed a grievance against McElwain and Settle for failing to stop the actions of Duncan and Ziegler and conspiring with them to retaliate against Plaintiff. (*Id.* at ¶ 37).

## IV. Discussion

Defendants seek dismissal of the amended complaint, or an entry of summary judgment, on the following grounds: (1) the damages claims against the Defendants in their official capacities are barred by the Eleventh Amendment; (2) Plaintiff failed to properly exhaust the administrative remedies prior to filing suit; (3) the amended complaint is barred by the applicable statute of limitations; and, (4) assuming *arguendo* that Plaintiff properly exhausted his administrative remedies and that the amended complaint is timely, he nonetheless fails to state a plausible claim for relief. (Doc. 27). The Court will address these claims *seriatim*.

### A. Official Capacity Claims

The Eleventh Amendment provides that each state is a sovereign entity and a sovereign is not amenable to suit unless it consents. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *see also Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). The Commonwealth of

6

Pennsylvania has expressly withheld its consent to be sued. *See Lavia v. Pa., Dept. of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000); *Williard v. Pennsylvania*, 1996 U.S. Dist. LEXIS 8407, 8420 (E.D. Pa. 1996) (stating it is a "well-established proposition that the Commonwealth of Pennsylvania has not consented to actions against it in federal court, and thus has not waived its Eleventh Amendment immunity from lawsuits by its citizens"). Further, claims against state officials in their official capacities are suits against the state and thereby barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

Plaintiff is suing six employees of the Pennsylvania Department of Corrections. To the extent that Plaintiff is suing the Defendants in their official capacities, Defendants enjoy Eleventh Amendment immunity from suit for acts taken in their official capacities, and any official capacity claims will be dismissed. *See* (Doc. 20-1, p. 2, ¶ 11) (stating that each Defendant is sued in their individual and official capacities).

## B. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001). The exhaustion requirement is mandatory, *see Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 741 (holding that the exhaustion

requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Courts have also imposed a procedural default component on the exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d 218. "As for the failure to identify named defendants on the grievance form,...to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And,...in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) (non-precedential). An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S.

8

81, 83-84 (2006). Thus, the PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Id.* at 92.

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 Pa.Code § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. *See Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

A declaration under penalty of perjury submitted by Deborah Alvord, Corrections

Superintendent's Assistant, states that based on a review of the DOC's Automated Inmate

Grievance Tracking System, Plaintiff submitted only one grievance relating to the

allegations in the amended complaint, Grievance Number 453709. (Doc. 27-3, pp. 2-3, ¶¶

1-4). Accompanying Alvord's declaration are copies of the relevant institutional

administrative remedy records. (Doc. 27-3, pp. 5-33).

      Plaintiff filed his initial grievance on March 20, 2013. (Doc. 27-3, p. 32). The text of

the grievance only names Defendant Whalen, and fails to name Duncan, Ziegler, Settle,

and McElwain. (*Id.*). The grievance is addressed to grievance coordinator Bell. (*Id.*).

There is no other reference to Defendant Bell in the grievance. (*Id.*). The grievance states

that Plaintiff's legal materials, religious books, and personal pictures were taken from his

cell as retaliation, and that Whalen tried to cover-up the misconduct of SMU staff. (*Id.*).

The grievance does not mention any access to courts claim, equal protection claim, Eighth

Amendment claim, interference with religion claim, substantive due process claim, or

conspiracy claim. (*Id.*). The initial grievance was denied. (*Id.* at p. 31). Grievance officer

Bell responded as follows:

> I have reviewed your grievance and investigated your claims. When I spoke
> to you at your cell door about the request slip you had submitted on this
> alleged incident, your response to me was "Don't worry about it." I then
> informed you that I would still respond to the request slip. The findings are
> still the same in that staff informed me the only items removed from your cell
> were some paper items located on your desk that *you* designated as "trash"
> as you were present for and observed the cell search. Staff stated once you
> designated the paper items on your desk as "trash", they were searched for

10

> contraband in your presence and then disposed of in your presence.  As you
> have provided no evidence to support any of your claims listed in your
> grievance, this grievance and any requested relief are denied.

(*Id.*).

Plaintiff filed an appeal to the Facility Manager.  (*Id.* at p. 29).  In the appeal, Plaintiff

only mentions Whalen in reference to his response to the initial grievance.  (*Id.*).  The

appeal does not name Duncan, Ziegler, Settle, McElwain, or Bell.  (*Id.*).  Plaintiff asserts

that he never told the officers to throw away his property, and requests compensation for

the lost items.  (*Id.*).  The Facility Manager denied the appeal and responded as follows:

> I am in receipt of your appeal and have reviewed your original grievance as
> well as the Grievance Officer's response.  You appeal continuing to claim that
> staff confiscated books and legal material from your cell on 3/7/13 and threw
> those items away.
>
> I find that the Grievance Officer properly investigated your grievance
> concerns and provided an appropriate response.  Staff were interviewed at
> the time of investigation and I have had additional staff, present that day,
> interviewed.  All staff vehemently deny removing anything from your cell other
> than what you proclaimed to be trash.  Staff also indicate that following the
> search, you remained at your door with no complaints or concerns.  You
> didn't request to speak to a ranking staff member about the situation at that
> time.  Further, your cell was searched on 3/7/13, yet you waited until 3/20 to
> file a grievance.  Clearly, your actions/behavior following the search on
> 3/7/13, was not indicative of an inmate that just had items inappropriately
> confiscated.  Your version of events is simply not credible.  Your appeal and
> any requested relief is denied.

(*Id.* at p. 30).

Plaintiff then appealed to final review.  (*Id.* at p. 28).  In the appeal, Plaintiff states

that the confiscation of his legal materials violated the constitution, and that the taking of his

11

religious books has burdened his practice of religion. (*Id.*).  The grievance contains no

assertions that it was improper for Whalen to review Plaintiff's initial grievance, and no

claims regarding access to courts, conspiracy, due process, Eighth Amendment, or equal

protection. (*Id.*).  None of the named Defendants are mentioned in the final appeal. (*Id.*).

The Chief Grievance Officer denied the final appeal and found as follows:

> A review of the record shows that you are filing an appeal on your claim that
> staff confiscated your religious books and legal materials and threw them
> away.  You claim that as a result, you cannot practice your religion.
>
> An investigation into the matter reveals that the staff was interviewed and
> denied throwing away your legal materials or religious books.  It was reported
> that on 3-7-13, your cell was searched and the only things that were
> confiscated were some paper items that you designated as trash when you
> were there.  A Confiscated Items Receipt was not needed for trash.  The Unit
> Manager interviewed you regarding this issue and you responded to him by
> saying, "Don't worry about it."  Based on this information, there is no evidence
> to substantiate your claims that staff confiscated anything other than trash.
> You failed to provide any evidence such as an Inmate Personal Property
> Inventory Sheet to show that you possessed any of these items such as
> books and/or legal materials.  Your request for payment of $10,000 is denied.

(*Id.* at p. 27).

As noted above, the standard used in determining whether a prisoner has exhausted

the administrative process is whether he complied with the applicable grievance procedures

and rules.  The relevant policy and the pertinent language states as follows:

> ***The text of the grievance must be legible, understandable, and***
> ***presented in a courteous manner.  The inmate must include a statement***
> ***of the facts relevant to the claim.  The statement of facts shall include***
> ***the date, approximate time and location of the event(s) that gave rise to***

*the grievance. The inmate shall identify individuals directly involved in the event(s).*

*The statement of facts must not exceed two pages and must be handwritten or typed on writing paper.... The inmate will also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law. If the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance.*

DC-ADM 804, § 1(A)(11-12). Notably, "[t]he inmate shall identify individuals directly

involved in the event(s)." DC-ADM 804, § 1(A)(11). The purpose of the regulation "is to put

the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill*, 372

F.3d at 234. Plaintiff failed to utilize the DOC's Inmate Grievance System with respect to

Defendants Duncan, Ziegler, Settle, McElwain, and Bell by failing to identify these

individuals in the initial grievance or any subsequent appeal.

Additionally, Plaintiff's initial grievance only states that his legal material, religious

books, and personal pictures were taken as retaliation, and that Whalen attempted to

"cover-up" these actions. Plaintiff's final appeal complains that the confiscation of his legal

materials violated the constitution, and that the taking of his religious books burdened his

practice of religion.[2]

Based upon Alvord's declaration, the submitted DOC administrative remedy records,

---

[2]   The amended complaint does not contain a claim for relief alleging interference with religion. *See* (Doc. 20-1, pp. 10-15).

13

and Plaintiff's failure to dispute any of the record evidence, the Court finds that Plaintiff did

not properly exhaust his claims in the amended complaint with respect to any claims against

Defendants Duncan, Ziegler, Settle, McElwain, and Bell. In reaching this determination, the

Court notes that Plaintiff failed to oppose Defendants' motion and thus failed to provide any

evidence that he properly exhausted administrative remedies. "[I]t is clear, regardless of the

purpose of the requirement, that *Spruill* requires the prisoner-grievant-plaintiff to name in the

grievance those he eventually sues, upon pain of procedural default." *Hemingway v. Ellers*,

2008 WL 3540526, at *11 (M.D. Pa. 2008) (citing *Williams*, 146 F. App'x at 557). Under

*Spruill*, it is the plaintiff's burden to explain why he did not name a defendant in the

grievance. *See Spruill*, 372 F.3d at 234 ("Spruill did not [name Brown in his grievance], and

has offered no explanation for his failure to do so"). Moreover, a party opposing summary

judgment must come forth with "affirmative evidence, beyond the allegations of the

pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311,

315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter

of law, to sustain a judgment in favor of the non-moving party on the claims. *See Anderson*,

477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587-89 (1986); *see also* FED. R. CIV. P. 56(c), (e). Plaintiff has not made any showing that

he should be excused from compliance with the exhaustion requirement. The undisputed

record establishes that Plaintiff failed to properly exhaust the available administrative

remedies with respect to Defendants Duncan, Ziegler, Settle, McElwain, and Bell.

To the extent that Plaintiff attempts to hold grievance coordinator Bell liable based on his involvement in the grievance procedure and responses to inmate grievances, this claim also fails. Inmates do not have a constitutional right to a prison grievance system. *Speight v. Sims*, 283 F. App'x 880 (3d Cir. 2008) (citing *Massey v. Hetman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); *Pryor-El v. Kelly*, 892 F.Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison official's failure to comply with grievance procedure is not actionable). Based on the foregoing, Defendants Duncan, Ziegler, Settle, McElwain, and Bell are entitled to an entry of judgment in their favor.[3]

## C.    Statute of Limitations

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996).

---

[3]    The Court will nevertheless proceed to an analysis of the merits of Plaintiff's claims.

In Pennsylvania, the statute of limitations for a personal injury action is two years. *See* 42

Pa. C.S. § 5524.  However, the date when a cause of action accrues is still a question of

federal law. *Smith v. Wambaugh*, 887 F.Supp. 752, 755 (M.D. Pa. 1995).  Under federal

law, a civil rights cause of action accrues, and the statute of limitations begins to run, when

the plaintiff "knew or should have known of the injury upon which [the] action is based."

*Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

The limitations period begins to run if a plaintiff has sufficient notice to place him on alert of

the need to begin investigating. *Gordon v. Lowell*, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000).

Under *Gordon*, a "claim accrues upon knowledge of the actual injury, not that the injury

constitutes a legal wrong." *Id.*  The statute of limitations is tolled while an inmate plaintiff

exhausts his administrative remedies. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598,

603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of

limitations while a prisoner exhausts administrative remedies.").

Plaintiff's cause of action accrued on March 7, 2013, when Defendants Duncan and

Ziegler allegedly searched his cell.  (Doc. 20-1, ¶ 12).  Consequently, the clock for filing a

civil rights action began on March 7, 2013, and Plaintiff had until March 9, 2015, to file a

timely civil rights action.  Plaintiff filed his initial Inmate Grievance on March 20, 2013.  (Doc.

27-3, p. 32, Informal Resolution Form).  He appealed review of his administrative remedies

to the Secretary's Office of Inmate Grievance and Appeals, where the appeal was denied

16

on June 20, 2013, and the statutory period started to run again on this date. (*Id.* at pp. 27-

31). Assuming that the statutory filing period was tolled for the ninety-two days during

which Plaintiff was pursuing his administrative remedies, Plaintiff had approximately seven

hundred seventeen days of the two-year filing period remaining. Consequently, Plaintiff was

required to file his complaint approximately on or before June 8, 2015. The original

complaint was filed on May 19, 2015.[4] The Court is satisfied that Plaintiff followed the

procedural rules regarding exhaustion and is entitled to statutory tolling while he exhausted

his administrative remedies. Accordingly, the Court will deny Defendants' motion to dismiss

the amended complaint as untimely.

## D.    Access to Courts Claim

An inmate has a constitutional right of access to the courts. *Lewis v. Casey*, 518

U.S. 343, 349-56, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817,

97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Abdul-Akbar v. Watson*, 4 F.3d 195, 202-03, 205 (3d

Cir.1993). "To state a cognizable access to courts claim, a plaintiff must plausibly show

that: (1) he suffered an 'actual injury' (i.e., that he lost an opportunity to pursue a

nonfrivolous claim); and (2) he has no other remedy, save the present civil rights suit that

can possibly compensate for the lost claim." *Williams v. Clancy*, 449 F. App'x 87, 89 (3d

---

[4]     Under the standards announced in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), Plaintiff's action will be deemed filed as of May 19, 2015, the date he signed his original complaint.

Cir. 2011) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)). In addition, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* In *Lewis v. Casey*, the Supreme Court made clear that a plaintiff must demonstrate actual injury. In other words, the inmate must allege some legal loss.

Plaintiff alleges that the confiscation of his legal documents hindered his ability to present evidence in pending civil and criminal matters. (Doc. 20-1, ¶¶ 25-26). Plaintiff references two civil matters, *Payne v. Wetzel*, No. 3:12-cv-1932 and *Payne v. Klemm*, No. 3:12-cv-2243, and two criminal matters, *Commonwealth v. Payne*, No. CP-51-CR-0904611-2005 and *Commonwealth v. Payne*, No. CP-27-CR-0000046-2008. (*Id.*). Plaintiff fails to set forth any allegations pertaining to the merits of the claims he wished to raise in these cases, and ultimately fails to establish an actual injury or legal loss.

A review of the state court docket[5] in the two criminal cases reveals that the cases have been closed since 2006 and 2009. *See Commonwealth v. Payne*, No. CP-51-CR-0904611-2005 and *Commonwealth v. Payne*, No. CP-27-CR-0000046-2008. Plaintiff could not possibly have lost the opportunity to present past legal claims or have been denied access to the courts in these criminal cases that have been closed for several years. Instead, Plaintiff complains that he no longer has "any personal records" pertaining

---

[5]    *See* Pennsylvania's Unified Judicial System Webportal, Common Pleas Courts Docket Sheets, available at: http://ujsportal.pacourts.us/DocketSheets/CP.aspx.

to his criminal cases. (Doc. 20-1, p. 10, ¶ 51).

Next, the Court has reviewed this District's docket regarding the civil cases in which Plaintiff was allegedly denied access to the courts. Upon review of the procedural posture in *Payne v. Wetzel*, No. 3:12-cv-1932 (M.D. Pa.), there can be no dispute that the action is pending and Plaintiff is pursuing his claims. On April 19, 2016, Magistrate Judge Carlson issued a Report and Recommendation recommending that certain claims be dismissed because Plaintiff failed to allege any facts to establish a plausible claim. *Wetzel*, No. 3:12-cv-1932 at (Doc. 88). Plaintiff failed to timely file any objections, and the Court adopted the R&R. *Wetzel*, No. 3:12-cv-1932 at (Doc. 92 ). There is no indication in Plaintiff's filings in that case that he was hindered in any way by prison officials. *Wetzel*, No. 3:12-cv-1932 at (Doc. 91). Plaintiff continues to litigate that action and, currently, there is a pending dispositive motion. *Wetzel*, No. 3:12-cv-1932 at (Doc. 110).

In *Payne v. Klemm*, No. 3:12-cv-2243 (M.D. Pa.), Plaintiff proceeded with the assistance of counsel and the action was settled in May 2016 through the Court's mediation program. Thus, the Court finds that Plaintiff has failed to establish that he was denied the ability to litigate these civil cases. In failing to establish an actual injury or some legal loss, Plaintiff has failed to demonstrate that he was unconstitutionally denied access to the courts.

### E.    Eighth Amendment

Plaintiff alleges that Defendants failed to intervene in the destruction of his property. (Doc. 20-1, p. 11, ¶¶ 57-58). A prisoner raising a failure to intervene claim under the Eighth Amendment must show: "(1) that the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a"realistic and reasonable opportunity to intervene.'" *Knight v. Walton*, 2014 WL 1316115, at *8 (W.D. Pa. 2014) (quoting *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002)). However, "there must exist an underlying constitutional violation" for there to be a failure to intervene. *Id.* (quoting Harper *v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)). Because the Court finds that Plaintiff has not stated an access to courts claim, there was no underlying violation and thus no duty to intervene.

Moreover, the Eighth Amendment protects against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To establish a violation of the Eighth Amendment, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992) (internal quotes omitted), *superseded by statute on other grounds as stated in Ghana v. Holland*, 226 F.3d 175, 184 (3d Cir. 2000). A deprivation of the minimal civilized measure of life's necessities requires the prisoner to establish that he was denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Plaintiff's claim

20

for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities.

## F.    Substantive Due Process

Plaintiff sets forth a Fourteenth Amendment substantive due process claim based on the theory that he was prevented from accessing the courts because his legal materials were destroyed. (Doc. 20-1, p. 11, ¶¶ 59-60). This claim fails pursuant to the "more-specific-provision" rule. In adopting the "more-specific-provision-rule" established in *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (clarifying prior holing in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260-61 (3d Cir. 2010). Because Plaintiff's claim fits squarely within the access to courts claim, the more-specific-provision rule forecloses Plaintiff's substantive due process claim.

## G.    Equal Protection

Plaintiff also claims that the destruction of his property violated his rights to Equal Protection. (Doc. 20-1, p. 12, ¶¶ 61-62). The Equal Protection Clause of the Fourteenth

21

Amendment provides that a state may not "deny to any person within its jurisdiction the

equal protection of the laws," which is essentially a direction that all persons similarly

situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne*

*Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)).

Classifications involving suspect or quasi-suspect class, or impacting certain fundamental

constitutional rights, are subject to heightened or "strict" scrutiny. *City of Cleburne*, 473

U.S. at 439.

An equal protection claim can also be brought by a "class of one," a plaintiff alleging

that he has been "intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528

U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also*

*Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction

between persons does not implicate a suspect or quasi-suspect class, state action will be

upheld if it is rationally related to a legitimate state interest. *See Tillman v. Lebanon County*

*Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Proof of disparate impact alone, however,

is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the

defendant intended to discriminate. *See Vill. of Arlington Heights v. Metro. Housing Dev.*

*Corp.*, 429 U.S. 252, 264-66 (1977); *Washington v. Davis*, 426 U.S. 229, 242, 244-45

(1976). Thus, discriminatory intent must be a motivating factor in the decision, even though

22

it need not be the sole motivating factor. *See Vill. of Arlington Heights*, 429 U.S. at 265-66.

Moreover, to prove a lack of rational basis, a plaintiff must negate every conceivable

rational basis for his differential treatment. *See Bd. of Trustees v. Garrett*, 531 U.S. 356,

367 (2001); *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157,

160 (3d Cir. 2002).

Plaintiff has failed to allege any facts, or present any evidence, from which it can be

concluded that the Defendants engaged in intentional or purposeful discrimination or that he

was treated differently than similarly situated persons on the basis of his age, race,

nationality or gender.  Additionally, Plaintiff does not allege that the conduct was intentional,

discriminatory treatment directed at just him.  Accordingly, he has failed to state an Equal

Protection claim.

### H.    Conspiracy

In order to demonstrate a conspiracy, "a plaintiff must show that two or more

conspirators reached an agreement to deprive him or her of a constitutional right 'under

color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993)

(quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other*

*grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392,

400 (3d Cir. 2003).  "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not

suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make

23

averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The Plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.* A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

Plaintiff alleges that Defendant Whalen conspired with the other Defendants to cover-up the destruction of his legal documents thereby denying him access to the courts. (Doc. 20-1, p. 12, ¶ 63). There are no averments in the amended complaint that reasonably suggest the presence of an agreement or concerted activity between the Defendants. Plaintiff has not alleged any facts showing any communication or cooperation among any Defendants from which an agreement could be inferred. Moreover, because the underlying denial of access to the courts claim will be dismissed, the Court will likewise dismiss Plaintiff's claim for conspiracy to commit that constitutional violation. *See Dykes v. Southeastern Pa. Transp. Auth.*, 68 F.3d 1564, 1570 (3d Cir. 1995) (determining that it is not necessary to reach the issue of conspiracy because plaintiff failed to allege cognizable violation of due process rights); *Samuel v. Clark*, 1996 WL 448229, at *4 (E.D. Pa. 1996) (dismissing conspiracy claim where underlying claims for fraud and discrimination were

dismissed).

### I.      Violation of Prison Policy

Lastly, Plaintiff alleges that Defendant Bell violated DOC policy when he assigned

Defendant Whalen to review the initial grievance. (Doc. 20-1, p. 14, ¶ 72). However,

Plaintiff's statement is unsupported, purely conclusory, and fails to state what prison policy

was allegedly violated. Plaintiff has failed to provide any evidence to support his statement.

Moreover, "[a]n inmate does not have a viable Section 1983 claim based solely upon a

prison official's failure to adhere to a prison regulation, directive, or policy statement."

*Royster v. Beard*, 2007 U.S. Dist. LEXIS 71368, *13 (M.D. Pa. 2007) (citing *Elkin v. Fauver*,

969 F.2d 48 (3d Cir. 1992)). Plaintiff's claim based solely upon the alleged failure to follow

prison policies fails to state a claim upon which relief may be granted.

### V.      Conclusion

Based on the foregoing, Defendants' motion will be granted. A separate order shall

issue.

Date: February ___, 2017

Robert D. Mariani
United States District Judge

25